**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON and NATIONAL SECURITY ARCHIVE,<br><br>               Plaintiffs,<br><br>     v.<br><br>THE HON. DONALD J. TRUMP, President of the United States of America, and EXECUTIVE OFFICE OF THE PRESIDENT,<br><br>               Defendants. | Case No. 1:17-CV-01228<br>Hon. Christopher R. Cooper |

## <u>MOTION TO DISMISS</u>

Defendants Donald J. Trump, President of the United States, and the Executive Office of the President, by and through undersigned counsel, respectfully move to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  As explained in the accompanying memorandum of law, this suit suffers from a panoply of jurisdictional and other threshold problems, including that Plaintiffs lack standing; that review of Defendants' compliance with the Presidential Records Act is precluded; and that Plaintiffs have otherwise failed to plead viable causes of action.  A proposed order is attached.

Dated:  October 6, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JESSIE K. LIU
U.S. Attorney for the District of Columbia

ELIZABETH J. SHAPIRO

Deputy Director, Federal Programs Branch

/s/ *Steven A. Myers*
STEVEN A. MYERS (NY Bar No. 4823043)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
Telephone:  (202) 305-8648
Fax:  (202) 616-8460
Email:  Steven.A.Myers@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, DC 20044

Courier Address:
20 Massachusetts Ave., NW Rm. 7334
Washington, DC 20001

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON and NATIONAL
SECURITY ARCHIVE,

               Plaintiffs,

    v.

THE HON. DONALD J. TRUMP, President of
the United States of America, and
EXECUTIVE OFFICE OF THE PRESIDENT,

               Defendants.

Case No. 1:17-CV-01228
Hon. Christopher R. Cooper

---

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................. iv

INTRODUCTION ............................................................................................... 1

BACKGROUND.................................................................................................. 3

I.      Plaintiffs' Allegations............................................................................. 3

II.     Legal Framework Governing Executive Branch Records ....................... 4

        A.      The Federal Records Act .......................................................... 5

        B.      The Presidential Records Act.................................................... 7

STANDARD OF REVIEW................................................................................... 7

ARGUMENT ...................................................................................................... 8

I.      The Court Should Dismiss This Case For Lack Of Standing Because Plaintiffs
        Have Failed To Plead Certainly Impending Future Injury. ........................... 8

II.     The Court Should Dismiss Claims One, Two, And Three Because The
        Presidential Records Act Precludes Judicial Review. .................................. 11

        A.      Judicial Review Of Defendants' Compliance With The PRA Is Precluded
                Under The D.C. Circuit's Decision In *Armstrong I*............................... 12

        B.      Post-*Armstrong I* Authority Does Not Counsel A Different Result. ............ 13

                1.      *Armstrong II*............................................................................ 13

                2.      Post-*Armstrong* District Court Decisions ..................................... 15

III.    The Court Should Dismiss Claims One, Two, And Four Because They
        Inappropriately Invoke The Declaratory Judgment Act, Which Does Not Create
        A Cause Of Action. ............................................................................... 20

IV.     Claim Three Should Be Dismissed Because Plaintiffs Do Not Satisfy The
        Demanding Standard For Mandamus Relief. ............................................. 21

        A.      Plaintiffs Do Not Allege That The Defendants Have Failed To Comply With
                Ministerial, Nondiscretionary Duties Owed To Them. ......................... 23

        B.      Entering A Writ Of Mandamus Against The President Would Raise
                Extraordinary Separation Of Powers Concerns. ................................. 27

        C.      Plaintiffs' Constitutional Take Care Claims Fare No Better. ............... 28

V.      Claim Four Should Be Dismissed Because Plaintiffs Have No Basis For
        Challenging The President's Use Of Executive Orders. ............................... 30

        A.      Claim Four Is Inadequately Pleaded Because It Fails To Identify Specific
                Executive Orders That Are Allegedly Unlawful. ................................. 30

        B.      Plaintiffs Cannot Proceed Under FOIA Because They Have Not Submitted
                A Particular FOIA Request, And Because FOIA Does Not Obligate Agencies
                To Create Or Obtain Documents That They Do Not Have. ..................... 31

C.      Plaintiffs Cannot Proceed Under The APA Because They Are Not Challenging A Particular Final Agency Action, Nor Have They Sued An Agency. ................ 33

D.      Plaintiffs Cannot Proceed Under The FRA ......................................................... 34

**CONCLUSION ................................................................................................................ 36**

## **TABLE OF AUTHORITIES**

**CASES**                                                                                           **PAGE(S)**

*Ali v. Rumsfeld,*
    649 F.3d 762 (D.C. Cir. 2011) ................................................................................... 2, 20, 21

*Am. Chemistry Council, Inc. v. Dep't of Health & Human Servs.,*
    922 F. Supp. 2d 56 (D.D.C. 2013) ..................................................................................... 33

*Am. Historical Ass'n v. NARA,*
    402 F. Supp. 2d 171 (D.D.C. 2005) ................................................................................... 11

*Am. Historical Ass'n v. NARA,*
    310 F. Supp. 2d 216 (D.D.C. 2004) ................................................................................... 11

*Am. Historical Ass'n v. Peterson,*
    876 F. Supp. 1300 (D.D.C. 1995) ................................................................................. 19, 28

*Armstrong v. Bush,*
    924 F.2d 282 (D.C. Cir. 1991) ................................................................................... passim

*Armstrong v. Bush,*
    139 F.R.D. 547 (D.D.C. 1991) .......................................................................................... 13

*Armstrong v. Exec. Office of the President,*
    1 F.3d 1274 (D.C. Cir. 1993) .................................................................................... passim

*Armstrong v. Exec. Office of the President,*
    90 F.3d 553 (D.C. Cir. 1996) ........................................................................................... 18

*Arpaio v. Obama,*
    797 F.3d 11 (D.C. Cir. 2015) ............................................................................................. 9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................... 8, 30

*Baker v. Carr,*
    369 U.S. 186 (1962) ......................................................................................................... 29

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................... 8, 13, 14, 30

*Bridges v. Blue Cross & Blue Shield Ass'n,*
    935 F. Supp. 37 (D.D.C. 1996) ........................................................................................ 21

*C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*,
    310 F.3d 197 (D.C. Cir. 2002) ........................................................................... 20, 21

*Calhoun v. U.S. Dep't of Justice*,
    693 F. Supp. 2d 89 (D.D.C. 2010) ........................................................................... 32

*\*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................................... 1, 9

*Columbia Power Trades Council v. Dep't of Energy*,
    671 F.2d 325 (9th Cir. 1982) .................................................................................... 22

*Conservation Force, Inc. v. Jewell*,
    733 F.3d 1200 (D.C. Cir. 2013) ................................................................................. 9

*Citizens for Responsibility & Ethics in Wash. v. Cheney*,
    593 F. Supp. 2d 194 (D.D.C. 2009) ................................................................... passim

*\*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*,
    527 F. Supp. 2d 101 (D.D.C. 2007) ..................................................... 2, 9, 10, 35

*Citizens for Responsibility & Ethics in Wash. v. Exec. Office of the Pres.*,
    587 F. Supp. 2d 48 (D.D.C. 2008) ........................................................................... 15

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
    563 F.3d 466 (D.C. Cir. 2009) ................................................................................... 9

*\*Dalton v. Spencer*,
    511 U.S. 462 (1994) .......................................................................................... 28, 29

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
    133 F. Supp. 3d 70 (D.D.C. 2015) ............................................................................ 21

*Doe v. U.S. Parole Comm'n*,
    602 F. App'x 530 (D.C. Cir. 2015) ........................................................................... 21

*Edmonds Inst. v. Dep't of the Interior*,
    383 F. Supp. 2d 105 (D.D.C. 2005) .......................................................................... 33

*Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*,
    795 F. Supp. 2d 85 (D.D.C. 2011) ............................................................................ 33

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
    --- F. Supp. 3d ----, 2017 WL 3141907 (D.D.C. July 24, 2017) .............................. 34

*Estate of Michael ex rel. Michael v. Lullo*,
 173 F.3d 503 (4th Cir. 1999) .......................................................................... 22

*Feinman v. FBI*,
 713 F. Supp. 2d 70 (D.D.C. 2010) .................................................................. 33

*Fla. Audubon Soc'y v. Bentsen*,
 94 F.3d 658 (D.C. Cir. 1996) ............................................................................ 9

*Forsham v. Harris*,
 445 U.S. 169 (1980) ........................................................................................ 32

*Glenn v. Thomas Fortune Fay*,
 222 F. Supp. 3d 31 (D.D.C. 2016) .................................................................. 21

*In re Blackwater Sec. Consulting, LLC*,
 460 F.3d 576 (4th Cir. 2006) .......................................................................... 22

*\*In re Cheney*,
 406 F. 3d 723 (D.C. Cir. 2005) ....................................................................... 23

*Int'l Counsel Bureau v. CIA*,
 No. 09-2269 (JDB), 2010 WL 1410561 (D.D.C. Apr. 2, 2010) .......................... 25

*Intelsat USA Sales Corp. v. Juch-Tech, Inc.*,
 935 F. Supp. 2d 101 (D.D.C. 2013) ................................................................ 21

*\*Judicial Watch, Inc. v. NARA*,
 845 F. Supp. 2d 288 (D.D.C. 2012) ................................................ 13, 15, 20, 24

*Kenney v. Dep't of Justice*,
 603 F. Supp. 2d 184 (D.D.C. 2009) ................................................................ 33

*\*Kissinger v. Reporters Comm. for Freedom of the Press*,
 445 U.S. 136 (1980) ................................................................................... *passim*

*\*Los Angeles v. Lyons*,
 461 U.S. 95 (1983) ............................................................................................ 9

*\*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ........................................................................... 8, 9, 11, 29

*Malek v. Flagstar Bank*,
 70 F. Supp. 3d 23 (D.D.C. 2014) .................................................................... 21

*Marbury v. Madison,*
  5 U.S. (1 Cranch) 137 (1803)...........................................................25, 26

*Mero v. City Segway Tours of Wash. D.C., LLC,*
  726 F. Supp. 2d 100 (D.D.C. 2011) ..........................................................31

*Metz v. BAE Sys. Tech. Solutions & Servs. Inc.,*
  774 F.3d 18 (D.C. Cir. 2014) ....................................................................21

*Mississippi v. Johnson,*
  71 U.S. (4 Wall.) 475 (1867) .....................................................................27

*Mohamed v. Select Portfolio Servicing, Inc.,*
  215 F. Supp. 3d 85 (D.D.C. 2016) ............................................................21

*Morley v. CIA,*
  508 F.3d 1108 (D.C. Cir. 2007) ..................................................................6

*N. Mariana Islands v. United States,*
  686 F. Supp. 2d 7 (D.D.C. 2009) ..............................................................34

*Nat'l Sec. Counselors v. CIA,*
  931 F. Supp. 2d 77 (D.D.C. 2013) ...............................................2, 10, 11

*Newdow v. Roberts,*
  603 F.3d 1002 (D.C. Cir. 2010) ................................................................27

*Nixon v. United States,*
  506 U.S. 224 (1993) ...................................................................................29

*PDK Labs, Inc. v. Reno,*
  134 F. Supp. 2d 24 (D.D.C. 2001) ............................................................23

*People for the Am. Way Found. v. Nat'l Park Serv.,*
  503 F. Supp. 2d 284 (D.D.C. 2007) ..........................................................33

*Physicians Comm. for Responsible Med. v. Dep't of Health & Human Servs.,*
  480 F. Supp. 2d 119 (D.D.C. 2007) ..........................................................33

*Prison Legal News v. Samuels,*
  787 F.3d 1142 (D.C. Cir. 2015) ..................................................................6

*Quick v. Dep't of Commerce,*
  775 F. Supp. 2d 174 (D.D.C. 2011) ..........................................................11

*Renne v. Geary*,
  501 U.S. 312 (1991) ................................................................................................ 8

*Ross v. United States*,
  460 F. Supp. 2d 139 (D.D.C. 2006) ....................................................................... 22

*Schilling v. Rogers*,
  363 U.S. 666 (1960) .............................................................................................. 20

*Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*,
  502 F. Supp. 50 (D.D.C. 2007) ............................................................................. 21

*Sierra Club v. Dep't of the Interior*,
  384 F. Supp. 2d 1 (D.D.C. 2004) .......................................................................... 33

*Sieverding v. U.S. Dep't of Justice*,
  847 F. Supp. 75 (D.D.C. 2012) ............................................................................. 31

*Superlease Rent-A-Car, Inc. v. Budget Rent- A-Car of Md.*,
  No. CIV. A. 89-0300 (RCL), 1989 WL 39393 (D.D.C. Apr. 13, 1989) ................. 21

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996) ......................................................................... 23, 27

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ......................................................................... 11, 32

*Tyree v. Hope Village, Inc.*,
  677 F. Supp. 2d 109 (D.D.C. 2009) ................................................................. 32, 33

*United States v. Espy*,
  145 F.3d 1369 (D.C. Cir. 1998) ....................................................................... 25, 28

*United States v. Instruments, S.A.*,
  807 F. Supp. 811 (D.D.C. 1992) ........................................................................... 21

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
  412 U.S. 669 (1973) ................................................................................................ 9

*UPMC Mercy v. Sebelius*,
  793 F. Supp. 2d 62 (D.D.C. 2011) ................................................................... 33, 34

*Walpin v. Corp. for Nat'l & Cmty. Serv.*,
  718 F. Supp. 2d 18 (D.D.C. 2010) ........................................................................ 21

*Warth v. Seldin*,
   422 U.S. 490 (1975) ..................................................................................... 9

*Webster v. Doe*,
   486 U.S. 592 (1988) ............................................................................... 23, 24

*West v. Jackson*,
   448 F. Supp. 2d 207 (D.D.C. 2006) ............................................................ 32

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ................................................................................. 9, 10

*Wright v. Foreign Serv. Grievance Bd.*,
   503 F. Supp. 2d 163 (D.D.C. 2007) .............................................................. 8

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. II, sec. 3 ................................................................................. 22, 28
*U.S. Const. art. III, sec. 2 ..................................................................................... 8

## STATUTES

5 U.S.C. § 552 ............................................................................................. *passim*
5 U.S.C. § 553 ...................................................................................................... 33
5 U.S.C. § 704 ...................................................................................................... 33
5 U.S.C. § 706 ...................................................................................................... 33
28 U.S.C. § 1361 ............................................................................................. 25, 26
28 U.S.C. § 2201 .................................................................................................. 20
44 U.S.C. § 2201 .................................................................................................... 4
44 U.S.C. § 2203 ........................................................................................... *passim*
44 U.S.C. § 2905 .................................................................................................... 6
44 U.S.C. § 3101 ............................................................................................... 5, 34
44 U.S.C. § 3105 .................................................................................................... 5
44 U.S.C. § 3106 ............................................................................................... 6, 34
44 U.S.C. § 3301 .................................................................................................... 4
Pub. L. No. 87-748, 76 Stat. 744 (1962) ............................................................. 26

## RULES

*Fed. R. Civ. P. 8 ................................................................................................. 30

## LEGISLATIVE MATERIALS

*108 Cong. Rec. 20,079 (1962) ........................................................................... 26
*S. Rep. No. 87-1992 (1962) ............................................................................... 26

*\* The authorities on which we principally rely are marked with asterisks.*

ix

## INTRODUCTION

Courts cannot review the President's compliance with the Presidential Records Act ("PRA").  As the D.C. Circuit has squarely held, "permitting judicial review of the President's compliance with the PRA would upset the intricate statutory scheme Congress carefully drafted to keep in equipoise important competing political and constitutional concerns."  *Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir. 1991) ("*Armstrong I*").  Indeed, "Congress . . . sought assiduously to minimize outside interference with the day-to-day operations of the President and his closest advisors and to ensure executive branch control over presidential records during the President's term in office," and so "it is difficult to conclude that Congress intended to allow courts, at the behest of private citizens, to rule on the adequacy of the President's records management practices or overrule his records creation, management, and disposal decisions."  *Id.*  At bottom, "[a]llowing judicial review of the President's general compliance with the PRA at the behest of private litigants would substantially upset Congress' carefully crafted balance of presidential control of records creation, management, and disposal during the President's term of office."  *Id.* at 291.

Flying headlong into this binding case law, Plaintiffs Citizens for Responsibility and Ethics in Washington ("CREW") and the National Security Archive ("NSA") have brought suit, demanding that this Court declare that Defendants have failed to heed the requirements of the PRA and asking the Court to enter a writ of mandamus against the President.  Their claims fail on numerous grounds, such that this case should be dismissed.

At the outset, Plaintiffs lack standing.  Plaintiffs seek exclusively declaratory and injunctive relief, which means that they must demonstrate an imminent risk of future injury that is traceable to Defendants' actions and redressable by an order from this Court.  *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Plaintiffs nebulously allege that they are frequent requesters under the Freedom of Information Act ("FOIA"), *see* ECF No. 1 ("Compl.") ¶¶ 9-12,

but they do not allege any specific intent to submit particular requests for any particular records. As this court has held, that is insufficient to demonstrate standing.  *See, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.* ("*CREW v. DHS*"), 527 F. Supp. 2d 101, 106 (D.D.C. 2007); *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 93-94 (D.D.C. 2013).

Even if Plaintiffs had standing, the vast majority of their claims are precluded by the PRA. As noted above, the D.C. Circuit held in *Armstrong I* that private litigants may not bring suit to challenge the President's compliance with the PRA.  While the D.C. Circuit subsequently held that courts hearing FOIA cases may review the President's PRA guidelines to ensure that he does not improperly treat agency records subject to FOIA as though they were instead presidential records subject to the PRA, *see Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1294 (D.C. Cir. 1993) ("*Armstrong II*"), D.C. Circuit law does not permit judicial review of whether the President is properly managing and preserving those records that are in fact subject to the PRA.

Second, most of Plaintiffs' claims seek free-floating declaratory relief under the Declaratory Judgement Act, without pleading a cause of action sufficient to get them into federal court in the first place.  As the D.C. Circuit has explained, the Declaratory Judgment Act "presupposes the existence of a judicially remediable right" and "does not create a cause of action." *Ali v. Rumsfeld*, 649 F.3d 762, 777-78 (D.C. Cir. 2011).  Plaintiffs' claims seeking purely declaratory relief should therefore be dismissed.  Claim three, the sole claim seeking mandamus relief, should additionally be dismissed because Plaintiffs have not satisfied the demanding standards for mandamus, and because entering a writ of mandamus against the President of the United States would raise extraordinary separation of powers concerns.  Finally, claim four, which alleges that the President's use of executive orders is precluding unnamed federal agencies from

complying with various statutory obligations, fails for a host of additional reasons set out more fully below.

## BACKGROUND

### I.     Plaintiffs' Allegations

Plaintiffs commenced this action by filing a complaint on June 22, 2017.  *See* Compl. Plaintiffs' relevant allegations generally fall into two categories. First, Plaintiffs allege that "White House staff . . . use certain email messaging applications that destroy the contents of messages as soon as they are read, without regard to whether the messages are presidential records." *Id.* ¶ 4; *see also id.* ¶¶ 50-64.[1]  Second, Plaintiffs allege that "Defendants have centralized much of the governmental decision-making within the White House," such that "decisions normally made or implemented by Executive Branch agencies evade disclosure under laws like FOIA, preservation under laws like the FRA [Federal Records Act], and public review and comment under the APA [Administrative Procedure Act]." *Id.* ¶ 5; *see also id.* ¶¶ 72-85.

Based on these allegations, Plaintiffs have pleaded four claims for relief:

- Claim one seeks a declaratory judgment that "knowing use by Defendants of messaging apps that prevent the preservation of presidential records violates the Presidential Records Act." Compl. Claim One (capitalization modified).

- Claim two seeks a declaratory judgment "that the failure of the President, his staff, and the EOP to issue guidelines concerning the use of messaging apps that prevent document preservation violates the Presidential Records Act." *Id.* Claim Two (capitalization modified).

---

[1] Plaintiffs' thirty-eight-page complaint also includes a number of other allegations that do not support any particular claim for relief, including that "[p]residential statements made on Twitter sent from the President's personal Twitter account . . . have been destroyed," Compl. ¶¶ 4, 66-69, that the President might be deleting tape recordings of conversations with administration officials, *id.* ¶¶ 4, 65, and that White House aides might "purge" their phones of "potentially compromising information" in response to FBI and congressional investigations, *id.*  Even if Plaintiffs had included claims for relief that are based on these allegations, review would be unavailable for all the reasons set out with respect to the claims for relief that they have actually pleaded.

- Claim three seeks a writ of mandamus and an injunction "compelling President Trump, his staff, and the EO[P] to comply with their non-discretionary duties under the PRA." *Id.* Claim Three (capitalization modified).

- Claim four seeks a declaratory judgment that "Defendants' use of the executive order process to remove records and rulemaking from the FRA and FOIA and the APA is contrary to law and violates the President's constitutional obligation to take care to faithfully execute the law." *Id.* Claim Four (capitalization modified).

## II.    Legal Framework Governing Executive Branch Records

Executive branch records are governed by either the Federal Records Act ("FRA") or the

PRA.  As explained more fully below, "[t]he FRA and the PRA apply to distinct categories of

documentary materials." *Armstrong II*, 1 F.3d at 1290.  Specifically, the FRA defines the records

governed by that statute as:

> all recorded information, regardless of form or characteristics, made or received by *a Federal agency* under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them.

44 U.S.C. § 3301(a)(1)(A) (emphasis added).  The PRA, in turn, defines presidential records as:

> documentary materials, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President.

44 U.S.C. § 2201(2).[2]  The PRA makes clear, however, that the definition of Presidential records

does not include "any documentary materials that are (i) official records of an agency (as defined

in" FOIA.  *Id.* § 2201(2)(B).  And while FOIA includes the "Executive Office of the President" in

---

[2] The Executive Office of the President includes certain offices whose sole function is to advise and assist the President — such as the White House Office and the National Security Council — as well as offices that have separate statutory responsibilities, such as the Office of Management and Budget and the Office of National Drug Control Policy.

its definition of agency, *see* 5 U.S.C. § 552(f)(1), the Supreme Court has made clear that this definition of agency excludes the President, "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980).

The upshot of these interlocking statutory provisions is that records created or received by most federal agencies — Cabinet departments, independent agencies, etc. — are subject to the FRA and FOIA, as are records generated by those components of the Executive Office of the President that have statutory responsibilities other than advising and assisting the President. *See* Compl. ¶ 14. Records created or received by the President and his closest advisors, in turn, are governed by the PRA. As described below, these two regimes create very different records management (and public access) systems, reflecting the care that Congress took to avoid encroaching upon the President's authority to manage his own records during his term in office.

A.      The Federal Records Act

"Federal agencies' records creation, management, and disposal duties are set out in a collection of statutes known collectively as the Federal Records Act." *Armstrong II*, 1 F.3d at 1278. Under the FRA, "[t]he head of each Federal agency shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101. The statute further provides, among other things, that agency heads must "establish safeguards against the removal or loss of records the head of such agency determines to be necessary and required by regulations of the Archivist." *Id.* § 3105; *see generally Armstrong II*, 1 F.3d at 1278-79 (providing overview of FRA).

The FRA states that "[t]he head of each Federal agency shall notify the Archivist" if the agency head becomes aware of the unlawful removal or destruction of records, "and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency."  44 U.S.C. § 3106(a); *see also id.* § 2905 (requiring Archivist to notify the agency head of unlawful removal or destruction of records and to assist the agency head in initiating action through the Attorney General).  If the agency head "does not initiate an action for such recovery or other redress within a reasonable period of time . . . , or is participating in, or believed to be participating in any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify Congress when such a request has been made." *Id.* § 3106(b).

Records of executive branch agencies subject to the FRA are generally subject to FOIA, which allows individuals to request the disclosure of records.  *See* 5 U.S.C. § 552(a)(3). Upon receipt of a request that "reasonably describes" the records being sought, *id.* § 552(a)(3)(A), an agency must typically "conduct[] a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (citation omitted).  The agency is generally required to disclose any responsive records, except to the extent that such records are protected from disclosure by one of FOIA's statutory exemptions.  *See* 5 U.S.C. § 552(b); *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 (D.C. Cir. 2015).

In the event that an agency withholds responsive records from the requester, the requester may, after exhausting administrative remedies, file a lawsuit in district court challenging the agency's withholdings. *See id.* § 552(a)(4)(B) (stating that the court may "enjoin the agency from

withholding agency records and to order the production of any agency records improperly withheld from the complainant").

### B.        The Presidential Records Act

Under the PRA, the President is directed to take "all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of the President's constitutional, statutory or other official or ceremonial duties are adequately documented and that such records are maintained as Presidential records pursuant to the requirements of this section and other provisions of law."  44 U.S.C. § 2203(a).  During the President's term in office, the President is generally precluded from disposing of presidential records unless he determines that the records "no longer have administrative, historical, informational, or evidentiary value" and obtains the written views of the Archivist of the United States.  *Id.* § 2203(c).  The Archivist "may notify Congress of the President's intent to dispose of the records," but "[t]he PRA gives neither the Archivist nor Congress the authority to veto the President's decision to destroy the records."  *Armstrong I*, 924 F.2d at 286.  Rather, "the PRA accords the President virtually complete control over his records during his term of office."  *Id.* at 290.

As noted above, FOIA does not, by its own terms, apply to Presidential records while the President is in office.  Pursuant to the PRA, however, Presidential records become subject to public request under FOIA five years following the President's final term in office, *see* 44 U.S.C. § 2204(b)(2), though the President may designate certain records as exempt from FOIA for a period of twelve years, *see id.* § 2204(a).

### STANDARD OF REVIEW

Defendants move to dismiss (1) under Federal Rule of Civil Procedure 12(b)(1), on the grounds that the Court lacks subject matter jurisdiction both because Plaintiffs lack standing and

because judicial review is precluded, and (2) under Rule 12(b)(6), on the ground that Plaintiffs fail to state a claim upon which relief may be granted.

When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citations omitted). "Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

In order to withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). The plaintiff must, accordingly, plead facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and offer "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

## I.     The Court Should Dismiss This Case For Lack Of Standing Because Plaintiffs Have Failed To Plead Certainly Impending Future Injury.

At the outset, the Court should dismiss this case because Plaintiffs have failed to plead facts sufficient to establish their standing. It is axiomatic that the subject matter jurisdiction of Article III courts extends only to "cases" and "controversies." U.S. Const. art. III, sec. 2; *accord,*

*e.g.*, *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466, 475 (D.C. Cir. 2009).

Article III's narrow limits on federal court jurisdiction are "founded in concern about the proper

— and properly limited — role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S.

490, 498 (1975).  Accordingly, Plaintiffs must show they have standing as a "predicate to any

exercise of [this Court's] jurisdiction." *Fla. Audubon Soc'y v. Bentsen,* 94 F.3d 658, 663 (D.C.

Cir. 1996).

 "The 'irreducible constitutional minimum' of standing contains three elements:  (1) injury-

in-fact, (2) causation, and (3) redressability." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200,

1207 (D.C. Cir. 2013) (quoting *Lujan*, 504 U.S. at 560-61).  "When a party seeks prospective

relief, such as a declaratory order invalidating an agency policy, it must show that it is likely to

suffer a future injury." *CREW v. DHS*, 527 F. Supp. 2d at 105 (citing *Los Angeles v. Lyons*, 461

U.S. 95, 109 (1983)); *accord, e.g.*, *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) ("[B]ecause

Sheriff Arpaio seeks prospective declaratory and injunctive relief, he must establish an ongoing or

future injury that is 'certainly impending'; he may not rest on past injury." (quoting *Clapper*, 568

U.S. at 409)).

 The Supreme Court has "repeatedly reiterated that threatened injury must be certainly

impending to constitute injury in fact, and that allegations of possible future injury are not

sufficient." *Clapper*, 568 U.S. at 409 (alteration omitted).  In other words, a "plaintiff must allege

that he . . . will in fact be perceptibly harmed by the challenged agency action, not that he can

imagine circumstances in which he could be affected by the agency's action." *United States v.*

*Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 688-89 (1973).  The

actual injury must be "concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*,

495 U.S. 149, 155 (1990). It must be "distinct and palpable" and "actual or imminent," not "conjectural" or "hypothetical." *Id.* (citations omitted).

In an attempt to satisfy these standards, CREW alleges that it "uses the FOIA to obtain information about the government" and "has a significant interest in accessing historical presidential records in a timely fashion, including the records of the current Administration when they become available for public review." Compl. ¶ 9. CREW further alleges that it "has filed nearly 100 FOIA requests since the start" of the current administration, though it provides no information about these requests. *Id.* ¶ 10. The National Security Archive, in turn, merely alleges that it "is one of the leading non-profit users of the FOIA," *id.* ¶ 11; it says nothing about either its pending FOIA requests or any FOIA requests that it plans to file in the future.

These allegations are woefully inadequate. Neither CREW nor the National Security Archive has actually alleged that they intend to submit FOIA requests for the President's records once those records become subject to public release under FOIA. They certainly have not alleged a specific intent to submit a particular FOIA request, which is what the law demands. *See, e.g.*, *CREW v. DHS*, 527 F. Supp. 2d at 106 (on motion to dismiss) ("CREW does not allege anywhere in its complaint or opposition brief that it has a FOIA request pending with the DHS or that it intends to file a specific FOIA request with the DHS for WAVES records in the near future. Without this information, the Court cannot say that the alleged future injury is either real or imminent. That CREW may one day file another FOIA request with the DHS does not represent a cognizable, palpable injury which presents a case or controversy for the Court to consider."); *Nat'l Sec. Counselors*, 931 F. Supp. 2d at 93-94 (on motion to dismiss) ("[G]eneral statements about a regular course of conduct and an expressed intention to continue to do so in the future do not establish the same concrete likelihood of injury that emanates from allegations of specific,

pending FOIA requests that are likely to be subject to an agency's challenged policies."); *Am. Historical Ass'n v. NARA*, 310 F. Supp. 2d 216, 228 (D.D.C. 2004) (on motion to dismiss) (notwithstanding "a significant likelihood that Plaintiffs will again seek access to presidential records, and face indeterminate delays in accessing them . . . the Court cannot find that this future injury is sufficiently imminent, and not conjectural and hypothetical");[3] *Quick v. Dep't of Commerce*, 775 F. Supp. 2d 174, 187 (D.D.C. 2011) ("[T]o the extent Quick seeks to establish his standing to pursue his 'pattern or practice' claim by his passing allegation that he 'plans to file additional FOIA requests to the NIST in the future,' the Supreme Court has foreclosed that route." (citing *Lujan*, 504 U.S. at 564)). Because Plaintiffs do not allege that they plan to submit specific FOIA requests for specific Presidential records (or categories of records), they have failed to plead facts sufficient to demonstrate their standing.

With respect to claim four, which concerns records that Plaintiffs believe should be available for request under FOIA now, Plaintiffs fail to identify any particular records, or any specific category of records, to which they believe they are entitled — let alone that they have actually requested. If there are any records to which Plaintiffs believe they are entitled, of course, the appropriate remedy is for Plaintiffs to request them under the FOIA, which they have not done. *See Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997); *see infra* Part V.B.

## II.     The Court Should Dismiss Claims One, Two, And Three Because The Presidential Records Act Precludes Judicial Review.

In claims one, two, and three, Plaintiffs seek to privately enforce the PRA: Claim one seeks a declaratory judgment that Defendants' use of certain messaging applications violates the PRA; claim two seeks a declaratory judgment that Defendants' alleged failure to issue guidelines

---

[3] Following the order dismissing the case in *American Historical Association*, the plaintiffs submitted additional facts and the Court reconsidered its decision. *See Am. Historical Ass'n v. Nat'l Archives & Records Admin.*, 402 F. Supp. 2d 171, 179 (D.D.C. 2005).

concerning such applications violates the PRA; and claim three seeks a writ of mandamus requiring Defendants to manage their records in compliance with the PRA.  The D.C. Circuit, however, has already held that "the PRA is one of the rare statutes that does impliedly preclude judicial review." *Armstrong I*, 924 F.2d at 290.  Indeed, the type of review that the D.C. Circuit rejected in that case — "judicial review of the President's general compliance with the PRA at the behest of private litigants" — is precisely what Plaintiffs demand from this Court.  *Id.* at 291.  Because such review is precluded, claims one, two, and three must be dismissed.

### A.   Judicial Review Of Defendants' Compliance With The PRA Is Precluded Under The D.C. Circuit's Decision In *Armstrong I*.

The D.C. Circuit's *Armstrong* decisions arose from a lawsuit alleging that then-Presidents Ronald Reagan and George H.W. Bush, among other defendants, "intend[ed] to delete material from the White House computer systems in violation of the FRA and PRA." *Armstrong I*, 924 F.2d at 286.  Specifically, the *Armstrong* plaintiffs sought access to emails that were stored on the National Security Council's ("NSC's") computers during the Reagan administration.  The plaintiffs sought "a declaration that many of the documents stored in [an electronic messaging] system at the close of the [Reagan] Administration are federal and presidential records," as well as "an injunction prohibiting the destruction of these documents." *Id.* at 287.

The D.C. Circuit held that that the PRA precluded judicial review of the plaintiffs' claims. As it explained, "permitting judicial review of the President's compliance with the PRA would upset the intricate statutory scheme Congress carefully drafted to keep in equipoise important competing political and constitutional questions." *Armstrong I*, 924 F.2d at 290.  It therefore explained that "it is difficult to conclude that Congress intended to allow courts, at the behest of private citizens, to rule on the adequacy of the President's record management practices or overrule his records creation, management, and disposal decisions." *Id.*  Because "[a]llowing judicial

review of the President's general compliance with the PRA at the behest of private litigants would substantially upset Congress' carefully crafted balance of presidential control of records creation, management, and disposal during the President's term of office," the Court "h[e]ld that the PRA precludes judicial review of the President's recordkeeping practices and decisions."  *Id.* at 291.

Claims one, two, and three each seek "judicial review of the President's recordkeeping practices and decisions," *Armstrong I*, 924 F.2d at 291:  Claim one seeks a declaratory judgment that Defendants are improperly disposing of presidential records; claim two seeks a declaratory judgment that Defendants have failed to issue guidelines prohibiting such unlawful disposal, and claim three seeks a writ of mandamus compelling the President to manage his records in compliance with the PRA.  Under *Armstrong I*, these claims are precluded and must be dismissed.

**B.      Post-*Armstrong I* Authority Does Not Counsel A Different Result.**

Since the D.C. Circuit's decision in *Armstrong I*, certain decisions have issued that permit review of decisions touching on PRA-related issues, including the D.C. Circuit's decision in *Armstrong II*.  While Plaintiffs have signaled that they will invoke these decisions in an attempt to avoid the straightforward holding of *Armstrong I*, *see* Compl. ¶ 105 ("[N]ot 'all decisions made pursuant to the PRA are immune from judicial review.'" (quoting *Armstrong II*, 1 F.3d at 1293)), those decisions do not undermine the central holding of *Armstrong I*.  As another Judge in this District has observed with regard to *Armstrong II*, "the actual holding of the case is much more narrow than this language that plaintiff recites."  *Judicial Watch, Inc. v. NARA*, 845 F. Supp. 2d 288, 297 (D.D.C. 2012) (Jackson, A.B., J.).  We begin by discussing *Armstrong II* and will then turn to the district court decisions that have interpreted it.

**1.      *Armstrong II***

Following the remand in *Armstrong I*, the plaintiffs amended their complaint to omit all claims seeking relief under the PRA.  *See Armstrong v. Bush*, 139 F.R.D. 547, 550 (D.D.C. 1991).

Instead, the plaintiffs pursued only their FRA- and FOIA-based claims — namely, their claims that NSC's guidelines defining "federal records" were inadequate because they "instruct NSC and OSTP [Office of Science and Technology Policy] staff to treat as presidential records materials that are, in fact, agency records subject to the FRA."  *Armstrong II*, 1 F.3d at 1290.

The D.C. Circuit explained that the "PRA does not bestow on the President the power to assert sweeping authority over whatever materials he chooses to designate as presidential records without any possibility of judicial review"; in that specific context, it said that "the courts are accorded the power to review guidelines outlining what is, and what is not, a 'presidential record.'" *Armstrong II*, 1 F.3d at 1290.  In other words, the Court held that when deciding FOIA claims, the courts may review PRA guidelines to ensure that the President does not treat too many materials as presidential records, thereby denying individuals access to them under FOIA:  "Thus, the court may review the EOP guidelines *for the limited purpose of ensuring that they do not encompass within their operational definition of presidential records materials properly subject to the FOIA.*" *Id.* (emphasis added).  As the Court explained, "[t]his narrow, clearly defined limitation on the scope of the PRA is absolutely essential to preventing the PRA from becoming a potential presidential carte blanche to shield materials from the reach of the FOIA. . . . [I]f guidelines that purport to implement the PRA were not reviewable for compliance with the statute's definition of presidential records, non-presidential materials that would otherwise be immediately subject to the FOIA would be shielded from its provisions . . . .".  *Id.* at 1292-93.

Thus, while *Armstrong II* reaffirmed *Armstrong I*'s holding that "decisions that involve materials that are truly presidential records are immune from judicial review," *id.* at 1293, it refused to permit the President to "designate any material he wishes as presidential records, and

thereby exercise 'virtually complete control' over it, notwithstanding the fact that the material does not meet the definition of 'presidential records' in the PRA." *Id.* at 1293-94 (citations omitted).

The bottom line holding of *Armstrong II* was, therefore, that "courts may review guidelines outlining what is, and what is not, a 'presidential record' *to ensure that materials that are not subject to the PRA are not treated as presidential records*." *Id.* at 1294 (emphasis added). Most courts in this district have understood the limited scope of *Armstrong II*'s holding. *See Judicial Watch*, 845 F. Supp. 2d at 297 ("*Armstrong II* was addressing a concern that too many records were being classified as Presidential, not too few."); *Citizens for Responsibility & Ethics in Wash. v. Exec. Office of the Pres.*, 587 F. Supp. 2d 48, 55 (D.D.C. 2008) (describing holding of *Armstrong II*: the "PRA does allow limited review to assure that guidelines defining Presidential records do not improperly sweep in nonpresidential records.").

*Armstrong II*'s limited holding has no application to this case. Plaintiffs (who are not pursuing FOIA or FRA claims) are not contending that Defendants have issued guidelines that improperly treat materials that should be subject to FOIA or the FRA as presidential records; rather, claims one, two, and three contend that the President is mismanaging and failing to preserve what Plaintiffs assert *are* presidential records. *See* Compl. ¶ 87 n.1. Those claims are governed by *Armstrong I*, not *Armstrong II*, and they are therefore barred from judicial review. *See Judicial Watch*, 845 F. Supp. 2d at 297-98 ("[A] close reading of the *Armstrong II* decision suggests that the limited judicial review authorized by the D.C. Circuit left untouched that portion of *Armstrong I* that gave the President unfettered control over his own documents.").

### 2.    Post-*Armstrong* District Court Decisions

Notwithstanding the care that the D.C. Circuit took in *Armstrong II* to announce a narrowly circumscribed holding, certain district court decisions have read it more broadly. Those decisions, which do not bind this Court, are either incorrectly decided, distinguishable, or both.

1.      In *Citizens for Responsibility & Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194 (D.D.C. 2009) ("*CREW v. Cheney*"), the plaintiffs alleged that Vice-President Cheney was only treating certain of his Vice-Presidential records as subject the PRA, while wrongly classifying others as personal.  *See* 44 U.S.C. § 2203(b) ("Documentary materials . . . shall, to the extent practicable, be categorized as Presidential records or personal records upon their creation or receipt and be filed separately.").  Judge Kollar-Kotelly read the D.C. Circuit's *Armstrong* cases as establishing the following rule:  "whether judicial review under the PRA was appropriate depended on whether the plaintiffs sought review of the President's 'creation, management, and disposal decisions' (as to which judicial review was not available) or the President's guidelines applied to the initial classification of documents (as to which review was available)."  *CREW v. Cheney*, 593 F. Supp. 2d at 214-15. The Court held that the plaintiffs' claims did "not implicate Defendants' 'recordkeeping practices,'" *id.* at 216, but instead focused on allegations that Defendants had "adopted policies and guidelines that exclude from the reach of the PRA all but a narrow category of [Vice-Presidential] records," *id.* at 217.  The Court held that "[t]hese allegations fall squarely within the types of claims concerning 'guidelines describing which existing materials will be treated as presidential records' that are subject to judicial review."  *Id.* (quoting *Armstrong II*, 1 F.3d at 1294); *see also id.* at 220 ("[A]bsent from the Vice President's discretion is his ability to change the definition of Vice-Presidential records provided by Congress when exercising his obligations under the PRA . . . .").

At the outset, Defendants respectfully submit that *CREW v. Cheney* incorrectly applied *Armstrong II*.  As noted above, *Armstrong II* held that "courts may review guidelines outlining what is, and what is not, a 'presidential record' to ensure that materials that are not subject to the PRA are not treated as presidential records."  *Armstrong II*, 1 F.3d at 1294.  The *CREW v. Cheney*

court recognized as much.  *See* 593 F. Supp. at 215 ("Clearly, [*Armstrong II*'s] holding was meant 'to ensure that materials that are not subject to the PRA are not treated as presidential records." (quoting *Armstrong II*, 1 F.3d at 1293)).  Yet while the court realized that the case before it "presents the reverse situation," it reasoned that "[t]he review undertaken by a court in each circumstances is nevertheless identical; a court must review the guidelines the executive uses to define records under the PRA."  *Id.*

That conclusion over-reads *Armstrong II*.  The exception recognized in *Armstrong II* was "limited," "narrow" and "clearly defined," 1 F.3d at 1290, 1292, arising solely from the concern that the President might improperly use the PRA to shield from release under FOIA materials that are not presidential records at all.  For that reason, the *Armstrong II* court held that "Congress preserved the critical role of judicial review under the FOIA, and avoided a conflict between the PRA and the FOIA, by explicitly exempting records subject to the FOIA from the scope of the PRA and allowing judicial review of guidelines defining presidential records *under the rubric of substantive FOIA law*," *id.* at 1292 (emphasis added).  In other words, the *Armstrong II* holding only applies when a FOIA plaintiff is contending that he did not obtain documents to which FOIA entitles him because the President wrongfully classified them as presidential records.

As to materials that are presidential records, and that are not subject to FOIA during the President's time in office, both *Armstrong I* and *Armstrong II* make abundantly clear that Congress left it to the President to comply with the statute, absent judicial intervention.  *See Armstrong I*, 924 F.2d at 290 ("[P]ermitting judicial review of the President's compliance with the PRA would upset the intricate statutory scheme Congress carefully drafted to keep in equipoise important competing political and constitutional concerns."); *Armstrong II*, 1 F.3d at 1293 ("[D]ecisions that involve materials that are truly presidential records are immune from judicial review.").  Indeed, a

subsequent decision from the *Armstrong* saga makes this point even more clear: "[R]ecord-keeping requirements of the FRA are subject to judicial review and enforcement; those of the PRA are not." *Armstrong v. Exec. Office of the President*, 90 F.3d 553, 556 (D.C. Cir. 1996) ("*Armstrong III*"). Because the *CREW v. Cheney* court ruled in favor of the government on other grounds, however, the government was unable to challenge its interpretation of *Armstrong II* on appeal.

In any event, *CREW v. Cheney* is distinguishable. As noted, it held that while claims about "creation, management, and disposal decisions" were precluded under *Armstrong I*, review was available of "the President's guidelines applied to the initial classification of documents." Claims one, two, and three here, however, do not challenge any guidelines and have nothing to do with the "initial classification of documents" as personal or presidential records under 44 U.S.C. § 2203(b). Rather, claim one seeks a declaratory judgment that the use of "messaging apps that prevent the preservation of presidential records violates the [PRA]." Compl. Claim One (capitalization modified). This claim concerns the management and disposal of presidential records, not their classification as presidential records or not. Claim two seeks a declaratory judgment that the failure to issue guidelines concerning such applications violates the PRA, *see* Compl. Claim Two; again, this claim has nothing whatsoever to do with the initial classification of materials as presidential records or not. Finally, claim three seeks a writ of mandamus compelling Defendants to "refrain from using methods of communication that destroy records before any determination can be made as to whether they should be preserved as presidential records." Compl. Prayer for Relief ¶ 3. Plaintiffs' allegation is thus not that Defendants are misclassifying presidential records as personal under 44 U.S.C. § 2203(b) — it is that Defendants are deleting them "wholesale." Compl. ¶¶ 95-96. At bottom, none of these claims has anything

to do with either guidelines or the classification of materials as subject to the PRA or not; instead, they all concern Defendants' management of records subject to the PRA.

2.    *CREW v. Cheney* relied in part on an earlier decision, *American Historical Association v. Peterson*, 876 F. Supp. 1300 (D.D.C. 1995).  In that case, the plaintiffs asked "the Court to declare null and void a Memorandum of Agreement between former President [George H.W.] Bush and former Archivist Don W. Wilson . . . , signed on the day former President Bush left office, which purports to give former President Bush exclusive control over electronic records of the Executive Office of the President created during former President Bush's term in office." *Id.* at 1303.  The effect of the agreement was to remove from the Archivist principal responsibility for making records management decisions following President Bush's term in office.  The plaintiffs challenged the agreement under both the PRA and Article II of the Constitution, among other legal theories.  *Id.*

The court explained that "[a] careful reading of the *Armstrong I* and *Armstrong II* opinions demonstrates that the Court of Appeals' holdings regarding judicial review of the President's compliance with the PRA do not extend to the preservation and disposal provisions applicable after a President has left office."  *Id.* at 1314-15; *see also id.* at 1315 ("[T]he provisions applicable to the Archivist's handling of records after a President's term of office, 44 U.S.C. § 2203(f), are not covered by the *Armstrong* decisions."); *id.* at 1315 ("While the *Armstrong* decisions preclude judicial review of the President's compliance with the PRA during his term in office, they did not address judicial review of the Archivist's compliance with her obligations under the PRA when she takes custody of Presidential records at the conclusion of the President's term.").  Insofar as the case before this Court deals only with the President's management of his records while he is in office, rather than the Archivist's management of those records after the President has left office,

*Peterson* has no application here. *See id.* at 1315 (noting that "the provisions applicable to the Archivist's handling of records after a President's term of office are not covered by the *Armstrong* decisions," likely because "the Archivist — not a former President — is charged with implementing § 2203(f), and . . . her actions are subject to judicial review").

### III.    The Court Should Dismiss Claims One, Two, And Four Because They Inappropriately Invoke The Declaratory Judgment Act, Which Does Not Create A Cause Of Action.

In addition to the numerous flaws discussed above, claims one, two, and four — which seek purely declaratory relief — should also be dismissed because they improperly invoke the Declaratory Judgment Act, 28 U.S.C. § 2201.  As discussed more fully below, that statute does not create a cause of action, but instead merely expands the remedies available in an otherwise proper civil action, which does not exist here.

At the outset, the PRA — which precludes judicial review — certainly does not create a cause of action.  *See Judicial Watch*, 845 F. Supp. 2d at 299 n.5 ("To the extent that plaintiff's claim is premised on the PRA, there is no private right of action under the PRA.").  Nor, as discussed more fully below, *see infra* Part V, do Plaintiffs validly invoke another cause of action in claim four.

While Plaintiffs' complaint is not a model of clarity on this point, it appears that claims one, two, and four rely exclusively upon the Declaratory Judgment Act for a cause of action.  The Declaratory Judgment Act, however, "presupposes the existence of a judicially remediable right," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); in other words, it does not create a cause of action. *See Ali,* 649 F.3d at 778 ("Nor does the Declaratory Judgment Act (DJA) provide a cause of action. It is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction.  Rather, the availability of declaratory relief presupposes the existence of a judicially remediable right.'" (quoting *C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*,

310 F.3d 197, 201 (D.C. Cir. 2002) (additional citations and alterations omitted)); *accord Metz v. BAE Sys. Tech. Solutions & Servs. Inc.*, 774 F.3d 18, 25 n.8 (D.C. Cir. 2014) (same); *Doe v. U.S. Parole Comm'n*, 602 F. App'x 530, 532 n.3 (D.C. Cir. 2015) (same).[4]   Because claims one, two, and four do not identify a valid cause of action against the government, the Court should dismiss them.

## IV.   Claim Three Should Be Dismissed Because Plaintiffs Do Not Satisfy The Demanding Standard For Mandamus Relief.

Claim three seeks a writ of mandamus "ordering the President, his staff, and the EOP to comply with their mandatory, non-discretionary duties under the PRA, and the President's obligations under the Take Care Clause." Compl. ¶ 108.  Plaintiffs' prayer for relief specifies that they are seeking an order compelling all Defendants "to refrain from using methods of

---

[4] This court has repeatedly applied this principle. *See Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 35 (D.D.C. 2016) ("A declaratory action under § 2201 is not a separate cause of action, but rather a prayer for relief."); *Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 28 (D.D.C. 2014) ("[A] count for a declaratory judgment is not cognizable as a separate cause of action, but is more properly included in the prayer for relief." (alterations omitted)); *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013) (same); *Walpin v. Corp. for Nat'l. & Comm. Serv.*, 718 F. Supp. 2d 18, 24 (D.D.C. 2010) (same); *Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d 85, 97 (D.D.C. 2016) ("The Act does not, however, provide a stand-alone cause of action; it only authorizes a form of relief."); *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 45 (D.D.C. 1996); *Detroit Int'l Bridge Co. v. Gov't of Canada*, 133 F. Supp. 3d 70, 88 (D.D.C. 2015) ("[T]he Declaratory Judgment Act does not provide a cause of action . . . although it does authorize a form of relief for properly-pled actions." (citation omitted)), *amended on denial of reconsideration*, 189 F. Supp. 3d 85 (D.D.C. 2016); *United States v. Instruments, S.A.*, 807 F. Supp. 811, 814 (D.D.C. 1992) ("When a complaint seeks declaratory relief . . there must be a basis for federal jurisdiction independent of the Declaratory Judgment Act itself. . . . But the plaintiff must also raise a federal claim, for the Declaratory Judgment Act does not create a cause of action."); *Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*, 502 F. Supp. 2d 50, 64 (D.D.C. 2007) ("Although Plaintiff purports to bring this claim under the Declaratory Judgment Act, it does not specify any cause of action *through which* the Court may exercise subject matter jurisdiction and grant declaratory relief."); *Superlease Rent-A-Car, Inc. v. Budget Rent-A-Car of Md.*, No. 89-0300, 1989 WL 39393, at *3 (D.D.C. Apr. 13, 1989) ("[T]he Declaratory Judgment Act . . . provides no independent cause of action.  The plaintiff must assert an interest in itself, *which the law recognizes.* In other words, the plaintiff must first have a cognizable cause of action . . . .").

communication that destroy records before any determination can be made as to whether they should be preserved as presidential records under the Presidential Records Act." Compl. Prayer for Relief ¶ 3.

While the mandamus statute theoretically could provide the cause of action that is lacking for Plaintiffs' other claims, mandamus — like other forms of judicial review — is not available when judicial review is precluded. As the Ninth Circuit has explained in declining to issue a writ of mandamus where judicial review was precluded, "[i]t would frustrate the Congressional scheme . . . if exclusive jurisdiction could be thwarted by a party's characterization of the nature of the lawsuit." *Columbia Power Trades Council v. Dep't of Energy*, 671 F.2d 325, 328-29 (9th Cir. 1982); *see also, e.g.*, *Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 506 (4th Cir. 1999) (Mandamus Act does not override statute that limits jurisdiction); *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 593 (4th Cir. 2006) (similar); *Ross v. United States*, 460 F. Supp. 2d 139, 150 (D.D.C. 2006) (similar, collecting authority). Because claim three is precluded by the PRA, *see supra* Part II, the Court need not consider whether Plaintiffs are otherwise entitled to mandamus relief.

Should the Court proceed further, however, it is apparent that Plaintiffs are not entitled to mandamus: Plaintiffs do not allege that the President has failed to comply with a ministerial duty owed to them, and entering a writ of mandamus against the President would raise extraordinary separation of powers concerns. Finally, that Plaintiffs have dressed up their PRA claim as a constitutional claim that the President has failed to take care that the laws be faithfully executed, *see* U.S. Const. Art II, sec. 3, cl. 5, does not change the analysis.

### A.   Plaintiffs Do Not Allege That The Defendants Have Failed To Comply With Ministerial, Nondiscretionary Duties Owed To Them.

Mandamus relief is appropriate only if a plaintiff has a clear right to relief, the defendants have a clear duty to act, and there is no other adequate remedy available to the plaintiff. *PDK Labs, Inc. v. Reno*, 134 F. Supp. 2d 24, 34 (D.D.C. 2001). Mandamus jurisdiction "is strictly confined. . . . Mandamus is 'drastic'; it is available only in 'extraordinary situations'; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief." *In re Cheney*, 406 F. 3d 723, 729 (D.C. Cir. 2005) (en banc). The duty "to be performed by the agency must be 'ministerial and the obligation to act peremptory, and clearly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable." *PDK Labs*, 134 F. Supp. 2d at 34. A ministerial duty "is one that admits of no discretion, so that the official in question has no authority to determine whether to perform the duty." *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996). "[E]ven if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary." *Cheney*, 406 F.3d at 729.

The PRA does not provide a "clear and compelling duty" owed by the President to plaintiffs. As relevant here, the statute provides that the President "shall take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of the President's constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are maintained as Presidential records pursuant to the requirements of this section and other provisions of law." 44 U.S.C. § 2203(a). The section leaves it to the President to "take all such steps as may be necessary," without defining any clear or ministerial duty appropriate for mandamus relief. *Cf. Webster v. Doe*, 486 U.S. 592, 600-01 (1988) (finding phrase "shall deem such termination necessary or advisable in the interests of the

United States" to "fairly exude[] deference to the Director").  In other words, as the D.C. Circuit has explained, compliance with the statutory regime is entrusted to the President.  *See Armstrong I*, 924 F.2d at 290 ("Congress . . . sought assiduously to minimize outside interference with the day-to-day operations of the President and his closest advisors and to ensure executive branch control over presidential records during the President's term in office."); *Armstrong II*, 1 F.3d at 1293 ("[D]ecisions that involve materials that are truly presidential records are immune from judicial review."); *Judicial Watch*, 845 F. Supp. 2d at 288 (President has "unfettered control over his own documents")

 *CREW v. Cheney* rejected an analogous argument, but its holding is again distinguishable. That decision held that the Vice-President lacked the authority to "change the definition of Vice-Presidential records provided by Congress when exercising his obligations under the PRA." 593 F. Supp. 2d at 220 (emphasis omitted); *see also id.* at 221 ("Congress did not grant the Vice President the discretion to apply whatever definition of Vice-Presidential records he decided suited him when undertaking his preservation obligations.").  Here, as discussed more fully above, *see supra* Part II, there is no suggestion that Defendants have modified the definition of presidential records.  Instead, Plaintiffs' allegation is that Defendants are using messaging applications that fail to preserve presidential records.  As *Armstrong I* confirms, however, the President's management and preservation of records is left to his discretion.  *See* 924 F.2d at 294 ("PRA accords the President virtually complete control over his records during his term of office.").  Even the *CREW v. Cheney* court recognized as much, explaining that "that the Vice President has discretion concerning the decision to create or dispose of Vice-Presidential records, and even how he chooses to preserve them."  593 F. Supp. 2d at 220.

24

Plaintiffs' suggestion that the PRA imposes specific nondiscretionary duties on "the EOP," *see* Compl. ¶ 105, is equally mistaken.  In actuality, the PRA provides that the *President* "shall take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of the President's constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are preserved and maintained as Presidential records pursuant to the requirements of this section and other provisions of law." 44 U.S.C. § 2203(a).  Many components of the EOP are not governed by the Presidential Records Act at all, but are instead governed by FOIA and the Federal Records Act.  *See* 5 U.S.C. § 552(f). It is only the President, his immediate personal staff, and "units in the Executive Office whose sole function is to advise and assist the President" who fall outside the FOIA/FRA regime and are instead governed by the PRA.  *See Kissinger*, 445 U.S. at 156.  It is because the EOP is composed of different offices subject to differing recordkeeping requirements that the D.C. Circuit has rejected the notion that the EOP itself is an "agency" under FOIA.  *See United States v. Espy*, 145 F.3d 1369, 1373 (D.C. Cir. 1998) ("[I]t has never been thought that the whole Executive Office of the President could be considered a discrete agency under FOIA."); *see also Int'l Counsel Bureau v. CIA*, No. 09-2269, 2010 WL 1410561, at *1 (D.D.C. Apr. 2, 2010).

Finally, even if the acts alleged by Plaintiffs represented a violation of Defendants' ministerial duties as a general matter, they do not represent a violation of such duties owed *to the Plaintiffs.  See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed *to the plaintiff*."); *cf., e.g.*, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 162 (1803) ("Mr. Marbury, then, since his commission was signed by the President, and sealed by the secretary of state, was appointed; and as the law creating the office, gave the officer

25

a right to hold for five years, independent of the executive, the appointment was not revocable; but vested in the officer legal rights, which are protected by the laws of this country.").  Any duties created under the PRA are owed not to Plaintiffs, but to the public at large.  *See, e.g.*, *Armstrong I*, 924 F.2d at 290 ("Congress sought to establish the *public* ownership of presidential records and ensure the preservation of presidential records for *public* access after the termination of a President's term in office." (emphasis added)).

The mandamus statute does not permit a plaintiff to vindicate duties owed to the general public.  Indeed, in adopting the language in 28 U.S.C. § 1361 that the governmental official must owe a duty "to the plaintiff," Congress specifically considered and rejected proposals to extend Section 1361 to the enforcement of duties owed by government officials to the general public.  *See* *See* S. Rep. No. 87-1992 (1962) (proposing to make mandamus relief available to enforce "a duty owed to the plaintiff or to make a decision in any matter involving the exercise of discretion").  Byron White, then the Deputy Attorney General, criticized this proposal on behalf of the Department of Justice:  "We think it essential that the section . . . specifically limit its exercise to ministerial duties owed *to the plaintiff*.  Should the language be applied to discretionary acts of Federal officers, the judicial branch would be invading the executive or legislative function in violation of the doctrine of separation of powers."  *Id.* at 6 (emphasis added); *see also* 108 Cong. Rec. 20,079 (1962).  The mandamus statute ultimately enacted by Congress followed the Deputy Attorney General's advice.  *See* Pub. L. No. 87-748, 76 Stat. 744 (1962); *see also* 108 Cong. Rec. 20,093 (1962) ("The Senate amendment makes it clear that the duty must be one owed to the plaintiff.").  Here, because Plaintiffs do not allege that Defendants are violating any duties owed specifically to them, they cannot obtain mandamus relief.

**B.      Entering A Writ Of Mandamus Against The President Would Raise Extraordinary Separation Of Powers Concerns.**

Even if Plaintiffs had properly alleged that the President was failing to comply with ministerial, nondiscretionary duties owed to them, issuing a writ of mandamus against the President would raise extraordinary separation of powers concerns.  The Supreme Court has said that a "grant of injunctive relief against the President himself is extraordinary, and should . . . raise [] judicial eyebrows," *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992).  The D.C. Circuit has gone even further, indicating that "courts do not have jurisdiction to enjoin" the President, *see Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) (citing *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867)).  While it has been suggested that Supreme Court precedent leaves open "the question whether the President might be subject to a judicial injunction requiring the performance of a purely 'ministerial' duty," *Franklin*, 505 U.S. at 823, 827 n.2 (Scalia, J., concurring), the D.C. Circuit has "never attempted to exercise power to order the President to perform a ministerial duty."  *Swan*, 100 F.3d at 978.  And courts have "never submitted the President to declaratory relief."  *Newdow*, 603 F.3d at 1013.

"The reasons why courts should be hesitant to grant such relief are painfully obvious; the President, like Congress, is a coequal branch of government, and for the President to 'be ordered to perform particular executive . . . acts at the behest of the Judiciary,' at best creates an unseemly appearance of constitutional tension and at worst risks a violation of the constitutional separation of powers."  *Swan*, 100 F.3d at 978 (quoting *Franklin*, 505 U.S. at 827 (Scalia, J., concurring in part and concurring in the judgment)).  Here, where Plaintiffs are not entitled to mandamus relief for any number of reasons (including the PRA's preclusion of judicial review), the Court should be exceptionally hesitant to break new constitutional ground by entering a writ of mandamus against the President.

C.     Plaintiffs' Constitutional Take Care Claims Fare No Better.

Plaintiffs further contend, relying principally on the *Peterson* case, that their entitlement to a writ of mandamus is bolstered by the Constitution's requirement that the President "take care that the laws, including the PRA, be faithfully executed."  *See* Compl. ¶ 106; U.S. Const. Art II, sec. 3, cl. 5.  As Plaintiffs concede, however, "the context of that case differs from the actions challenged here."  Compl. ¶ 40.  As discussed above, *Peterson* involved an agreement that granted "former President [George H.W.] Bush, now a private citizen, authority to direct the former Archivist's actions and those of his successors, while Article II of the Constitution vests in the incumbent President the authority to direct the actions of current Executive officials."  *Peterson*, 876 F. Supp. at 1320.  The Court held that "former President Bush has no constitutional authority to direct the actions of the Archivist, as that authority properly belongs to President Clinton."  *Id.* at 1321.  *Peterson* has no application here, since Plaintiffs do not allege that a former President has sought to reserve for himself the current President's obligation to faithfully execute the PRA.[5]

Instead, Plaintiffs' complaint exclusively challenges the current President's faithful execution of the laws.  At the outset, that claim is simply a dressed-up allegation that the President is failing to comply with a federal statute.  Where judicial review of the President's compliance with the PRA is squarely precluded, *see supra* Part II, Plaintiffs cannot save their claim by calling it a constitutional take care claim.  *See, e.g.*, *Dalton v. Spencer*, 511 U.S. 462, 471 (1994) (rejecting argument "that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine"); *id.* at 474 ("The distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of

---

[5] In addition, in *Peterson*, the plaintiffs relied upon the APA for their cause of action against the Archivist.  *Peterson*, 876 F. Supp. at 1321.  Plaintiffs do not purport to bring APA claims here, nor could they bring APA claims against the President or the EOP.  *See Franklin*, 505 U.S. at 796; *Espy*, 145 F.3d at 1373.

the Constitution, on the other, is too well established to permit this sort of evisceration."). Any

other result would render *Armstrong I*'s holding utterly meaningless. *See Dalton*, 511 U.S. at 474

("As this case demonstrates, if every claim alleging that the President exceeded his statutory

authority were considered a constitutional claim, the exception identified in *Franklin* [permitting

review of presidential acts for constitutionality] would be broadened beyond recognition.").

Plaintiffs cannot transform their garden-variety statutory claim into a constitutional one by alleging

that the President's failure to comply with a federal statute amounts to a violation of his

constitutional responsibilities under Article II.

Finally, even if Plaintiffs had alleged real claims under the Take Care clause, courts lack

jurisdiction over a claim where there is "a textually demonstrable constitutional commitment of

the issue to a coordinate political department" or "a lack of judicially discoverable and manageable

standards for resolving it." *Nixon v. United States*, 506 U.S. 224, 228 (1993) (quoting *Baker v.*

*Carr*, 369 U.S. 186, 217 (1962)). The Supreme Court made clear in *Marbury* that under "the

constitution of the United States, the president is invested with certain important political powers,

in the exercise of which he is to use his own discretion, and is accountable only to his country in

his political character." 5 U.S. at 165-66 (1803). The Supreme Court has accordingly made clear

that courts cannot supervise the President in his carrying out of this Constitutional function:

> Very different is the duty of the President in the exercise of the power to see that
> the laws are faithfully executed . . . . The duty thus imposed on the President is in
> no just sense ministerial. It is purely executive and political.
>
> An attempt on the part of the judicial department of the government to enforce the
> performance of such duties by the President might be justly characterized, in the
> language of Chief Justice Marshal, as 'an absurd and excessive extravagance.'

*Mississippi v. Johnson*, 71 U.S. at 499; *see also, e.g.*, *Lujan*, 504 U.S. at 577 (holding that it would

be improper for the courts to take over the President's duty to "take Care that the Laws be faithfully

executed").

**V.      Claim Four Should Be Dismissed Because Plaintiffs Have No Basis For Challenging The President's Use Of Executive Orders.**

Claim four alleges that Defendants "have used executive orders to transform what would otherwise be federal records into presidential records and cloak the entire process in secrecy, seeking to evade the transparency and accountability sought by the FOIA, FRA, and APA." Compl. ¶ 110. "By removing from agencies the process of issuing policies and guidance, the Defendants have, in effect, blocked the federal agencies from complying with federal law and policy, including the FRA, FOIA, and APA." *Id.* ¶ 117.  Plaintiffs seek "a declaratory judgment that the Defendants' interference with the obligations that the FRA, FOIA, and APA impose on federal agencies is contrary to law and violates the President's constitutional obligation to take care that the law be faithfully executed." *Id.* ¶ 120.  This claim is both inadequately pleaded and substantively deficient.

**A.      Claim Four Is Inadequately Pleaded Because It Fails To Identify Specific Executive Orders That Are Allegedly Unlawful.**

At the outset, claim four fails for a remarkable lack of specificity:  Plaintiffs do not contend that a particular executive order unlawfully arrogates executive power within the White House, but instead make broad, generalized allegations about the President's use of executive orders writ large.  Indeed, Plaintiffs have not even sued any of the federal agencies that they believe have been precluded from complying with their statutory obligations.  Plaintiffs cannot plead their claims so vaguely.  *See* Fed. R. Civ. P. 8(a)(2) (complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Iqbal*, 556 U.S at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of "'further factual enhancement.'"  (citations omitted; quoting *Twombly*, 550 U.S. at 555, 557)).

If Plaintiffs believe that a particular executive order issued by the President was unlawful, they must identify the executive order and state specifically why it is unlawful; anything less does not fairly put Defendants on notice of the nature of Plaintiffs' claims and the grounds on which they rest. *See, e.g., Sieverding v. U.S. Dep't of Justice*, 847 F. Supp. 75, 86 (D.D.C. 2012) ("[I]t is not clear what record forms the basis of her § 552a(d) complaint, nor what record Sieverding seeks to amend. Accordingly, in these claims . . . Sieverding cannot even satisfy the requirements of Federal Rule of Civil Procedure 8 . . . ."); *Mero v. City Segway Tours of Wash. D.C., LLC*, 726 F. Supp. 2d 100, 107 (D.D.C. 2011) ("[C]onclusory allegation, which does not specify how defendants evaded the spirit of the contract, willfully rendered imperfect performance, or interfered with performance by plaintiff, does not suffice to state a claim under the standard set forth in *Twombly* and *Iqbal*."). And like most of Plaintiffs' other claims in this case, claim four identifies no cause of action against the government other than the Declaratory Judgment Act.

In addition to those procedural deficiencies, claim four is also substantively deficient, as neither FOIA, nor the FRA, nor the APA, prohibits the behavior that Plaintiffs allege in their complaint.[6] These substantive problems are discussed in turn below.

**B.      Plaintiffs Cannot Proceed Under FOIA Because They Have Not Submitted A Particular FOIA Request, And Because FOIA Does Not Obligate Agencies To Create Or Obtain Documents That They Do Not Have.**

Claim four contends that by centralizing policymaking in the White House, Defendants have inappropriately precluded agencies from creating federal records that Plaintiffs would otherwise be entitled to obtain through FOIA. FOIA, however, merely "vests jurisdiction in federal district courts to enjoin an 'agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Kissinger*, 445

---

[6] To the extent that claim four also rests upon the Take Care Clause, the claim fails for all the reasons discussed with respect to claim three. *See supra* Part IV.C.

U.S. at 139 (quoting 5 U.S.C. § 552(a)(4)(B)); *Tax Analysts*, 117 F.3d at 610 ("The only remedy

[5 U.S.C.] § 552(a)(4)(B) mentions is an order directing the agency to produce the records to the

complaining party.").   It is well established that FOIA "does not obligate agencies to create or

retain documents; it only obligates them to provide access to those which it in fact has created and

retained."  *Kissinger*, 445 U.S. at 152; *see also, e.g.*, *Forsham v. Harris*, 445 U.S. 169, 186 (1980)

("[T]he FOIA imposes no duty on the agency to create records."); *Armstrong II*, 1 F.3d at 1287

("Nor do we saddle agencies with any new obligations to make additional documents in order to

satisfy the needs of researchers or investigators.").  Plaintiffs do not have any FOIA-derived rights

for any particular agency to create any particular document.

Even if Plaintiffs did have relevant rights under FOIA (which they do not), there is an

established way to assert rights under FOIA:  submit a request for records and file suit if the agency

fails to comply.  Under FOIA, an agency is required to release documents upon receipt of "any

request for records which (i) reasonably describes such records and (ii) is made in accordance with

published rules stating the time, place, fees (if any), and procedures to be followed."

5 U.S.C. § 552(a)(3)(A).   If an agency does not comply, the complainant can file suit.

*See id.* § 552(a)(4)(B) ("On complaint, the district court . . . has jurisdiction to enjoin the agency

from withholding agency records and to order the production of any agency records improperly

withheld from the complainant.").  But "[w]here a FOIA request is not made in accordance with

the published regulations, the FOIA claim is subject to dismissal for failure to exhaust

administrative remedies."  *Calhoun v. U.S. Dep't of Justice*, 693 F. Supp. 2d 89, 91 (D.D.C. 2010)

(citing *West v. Jackson*, 448 F. Supp. 2d 207, 211 (D.D.C. 2006)); *see also Tyree v. Hope Vill.,*

*Inc.*, 677 F. Supp. 2d 109, 111 (D.D.C. 2009) (where "the plaintiff did not comply with the

applicable DOJ FOIA regulations . . . the FOIA claim cannot be maintained even against a proper

defendant because it has not been exhausted; it has not even been initiated").  Plaintiff has not exhausted a FOIA claim or filed a FOIA suit.

As this court has recognized, plaintiffs must assert their FOIA rights under FOIA, or not at all.  *See Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) ("This Court and others have uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA."); *see also, e.g.*, *Am. Chemistry Council, Inc. v. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 66 (D.D.C. 2013); *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 795 F. Supp. 2d 85, 95 (D.D.C. 2011); *Kenney v. Dep't of Justice*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009); *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 308 (D.D.C. 2007); *Physicians Comm. for Responsible Med. v. Dep't of Health & Human Servs.*, 480 F. Supp. 2d 119, 121 n.2 (D.D.C. 2007); *Edmonds Inst. v. Dep't of the Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005); *Sierra Club v. Dep't of the Interior*, 384 F. Supp. 2d 1, 30 (D.D.C. 2004).  Because Plaintiffs have not alleged that they have submitted a specific FOIA request or filed a lawsuit under FOIA, they cannot enforce any FOIA rights in this lawsuit.

### C.     Plaintiffs Cannot Proceed Under The APA Because They Are Not Challenging A Particular Final Agency Action, Nor Have They Sued An Agency.

Plaintiffs similarly cannot proceed under the APA.  Under the APA, before agencies issue legislative rules, they are generally required to provide notice of a proposed rulemaking and solicit public comments.  *See* 5 U.S.C. § 553.  The APA creates judicial review over "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and among the arguments available to APA plaintiffs are that the agency action was taken "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  There are therefore numerous court decisions setting aside legislative rules that were issued without following the notice and comment provisions of the APA.  *See, e.g.*, *UPMC Mercy*

*v. Sebelius*, 793 F. Supp. 2d 62, 70 (D.D.C. 2011); *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 17 (D.D.C. 2009).  Like the plaintiffs in those cases, Plaintiffs here are free to identify a final agency action that they think was enacted without the procedure required by law and bring an APA suit against the agency that promulgated it.

Plaintiffs here, however, do not identify a final agency action that they intend to challenge — nor do they even name an agency as a Defendant.  *See Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, --- F. Supp. 3d ----, 2017 WL 3141907, at *13 (D.D.C. July 24, 2017) (rejecting view that EOP as a whole is an agency subject to APA).  They thus plainly have not stated claims under the APA.

### D.      Plaintiffs Cannot Proceed Under The FRA.

Finally, Plaintiffs may not proceed under the Federal Records Act.  As relevant here, the FRA provides that the "head of each Federal agency shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities."  44 U.S.C. § 3101.  The only judicial proceedings contemplated by the statute are an action brought by the Attorney General to prevent or remedy the unlawful removal of records, upon the referral of either the agency head or the Archivist of the United States.  *See* 44 U.S.C. § 3106.

As the Supreme Court has held, "[n]o provision" of the FRA "expressly confers a right of action on private parties. Nor do we believe that such a private right of action can be implied." *Kissinger*, 445 U.S. at 148.  Thus, the Supreme Court held, "regardless of whether Kissinger has violated the [FRA], Congress has not vested federal courts with jurisdiction to adjudicate that question upon suit by a private party. That responsibility is vested in the administrative

authorities." *Id.* at 149-50.  The D.C. Circuit nonetheless held in *Armstrong I* that district courts "may entertain plaintiffs' claim that [a federal agency's] recordkeeping guidelines and directives . . . are inadequate because they permit the destruction of 'records' that must be preserved under the FRA,'" *id.* at 291, and it further held that the agency head's decision whether or not to refer a matter to the Attorney General is subject to judicial review.  *Id.* at 297.  The D.C. Circuit has not wavered, however, from the holding "that the FRA precludes direct private actions to require [] agency staff [to] comply with the agency's recordkeeping guidelines." *Armstrong I*, 924 F.2d at 297.  "Because it would clearly contravene this system of administrative enforcement to authorize private litigants to invoke federal courts to prevent an agency official from improperly destroying or removing records, we hold that the FRA precludes judicial review of such actions." *Id.* at 294; *see also, e.g.*, *CREW v. DHS*, 527 F. Supp. 2d at 111 (private litigants are "precluded from suing the DHS to enjoin the agency from acting in contravention of its own recordkeeping guidelines or the FRA. *The Court may not, in other words, prohibit the DHS from improperly discarding agency records* . . . . The FRA . . . precludes a private action, like this one, that seeks to require agency staff to comply with the agency's recordkeeping guidelines or the FRA, or to retrieve records lost." (emphasis added)).

Under *Kissinger* and *Armstrong I*, it is apparent that if Plaintiffs had sued a federal agency subject to the Federal Records Act and alleged that it was failing to comply with that statute, judicial review would be squarely precluded.  But here, Plaintiffs have not done even that.  Instead, they have sued the President and the Executive Office of the President, who are not statutorily responsible for other federal agencies' compliance with the FRA.  Even assuming that judicial review were available of a particular agency's compliance with the FRA, Plaintiffs would need to

sue the party that is allegedly failing to comply.  Since they have not done so here, they have not stated claims under the FRA.

## CONCLUSION

Defendants respectfully request that their motion be granted and that this case be dismissed with prejudice.

Dated:  October 6, 2017                Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JESSIE K. LIU
U.S. Attorney for the District of Columbia

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ *Steven A. Myers*
STEVEN A. MYERS (NY Bar No. 4823043)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
Telephone:  (202) 305-8648
Fax:  (202) 616-8460
Email:  Steven.A.Myers@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, DC 20044

Courier Address:
20 Massachusetts Ave., NW Rm. 7334
Washington, DC 20001

*Counsel for Defendants*