IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON and NATIONAL
SECURITY ARCHIVE,

           Plaintiffs,

v.

THE HON. DONALD J. TRUMP and
THE EXECUTIVE OFFICE OF THE
PRESIDENT,

           Defendants.

Case No. 1:17-CV-01228
Hon. Christopher R. Cooper

**DECLARATION OF NOAH BOOKBINDER**

I, Noah D. Bookbinder, declare as follows:

1. I am the Executive Director of Citizens for Responsibility and Ethics in Washington ("CREW"), a Plaintiff in the above-captioned action. I have served as Executive Director of CREW since March 23, 2015.

2. CREW is a nonprofit, non-partisan organization founded in 2002 that works on behalf of the public to foster an ethical and accountable government. CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials. To advance its mission, CREW uses a combination of research, litigation, advocacy, and public education to enforce ethics laws and regulations and to disseminate information to the public about public officials and their actions.

3. In my role as Executive Director of CREW, I oversee and am familiar with CREW's research, litigation, advocacy, and public education efforts.

4.  CREW has a longstanding interest in the adequacy of recordkeeping by the executive branch, including compliance by the White House with its responsibilities under the Presidential Records Act. For example, in 2007, CREW brought a lawsuit against the Executive Office of the President ("EOP"), the Office of Administration, Alan Swendiman (the Head of the Office of Administration), the National Archives and Records Administration, and Dr. Allen Weinstein (the Archivist of the United States), challenging their knowing failure to recover, restore, and preserve millions of electronic communications created and/or received within the White House. *See Citizens for Responsibility & Ethics in Washington v. Exec. Office of President*, 587 F. Supp. 2d 48 (D.D.C. 2008). CREW litigated this case for three years until its resolution in 2010.

5.  Similarly, in 2008, CREW sued Vice President Richard Cheney, EOP, the Executive Office of the Vice President, the National Archives and Records Administration, and Dr. Allen Weinstein (the Archivist of the United States), for unlawfully limiting the scope of vice presidential records subject to the Presidential Records Act (PRA). *See Citizens for Responsibility & Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194 (D.D.C. 2009).

6.  CREW also brought the instant lawsuit to compel the President and the EOP to comply with their obligations under the FOIA, the PRA, and the Federal Records Act.

7.  In addition to litigation, CREW files requests under the Freedom of Information Act ("FOIA") to obtain information about the government critical to its mission and purpose. CREW disseminates the documents it receives to these requests on its website, www.citizensforethics.org, and uses those records as the basis for reports, complaints, litigation, or other publications.

8. Since the start of the Trump Administration, CREW has submitted over 130 requests under the Freedom of Information Act ("FOIA") on a wide variety of subjects. Many of CREW's FOIA requests are still pending.

9. Several of CREW's FOIA requests have sought documents that originated in the White House. Among other topics, CREW has filed FOIA requests seeking to learn the extent to which the White House consulted with relevant agencies before issuing an executive order on January 27, 2017, Protecting the Nation from Foreign Terrorist Entry into the United States (the "immigration travel ban"). On February 3, 2017, CREW submitted a FOIA request to the Citizenship and Immigration Services, the Immigration and Customs Enforcement, the Federal Aviation Administration, Department of Homeland Security, the Department of Transportation, and the Transportation Security Administration, for copies of communications from anyone within or acting on behalf of the EOP concerning the immigration travel ban. As CREW explained in its requests, the requested records would shed light on the role, if any, that agencies played in the development of the immigration travel ban and the extent to which those agencies were provided an opportunity to review and weigh in on the executive order before President Trump issued it. On February 6, 2017, CREW filed identical FOIA requests with the Office of the Director of National Intelligence and the State Department. True and correct copies of CREW's FOIA requests are attached as **Exhibit A**.

10. By letters dated February 13, 2017, the Department of Homeland Security acknowledged that it had received FOIA requests from CREW for documents sent to or from staff of Citizenship and Immigration Services and the Transportation Security Administration. A true and correct copy of this acknowledgement is attached as **Exhibit B**. However, CREW never made these particular requests to the Department of Homeland Security. The Transportation

3

Security Administration separately acknowledged receipt of CREW's FOIA request by letter dated February 22, 2017. A true and correct copy of this acknowledgement is attached as **Exhibit C**.

11. By letter dated March 28, 2017, Immigration and Customs Enforcement stated that it was forwarding CREW's FOIA request to the Department of Homeland Security FOIA office. A true and correct copy of this letter is attached as **Exhibit D**. The Department of Homeland Security responded by letter dated October 19, 2017, stating that Immigration and Customs Enforcement was the proper office to respond to CREW's request and closing the request with the Department of Homeland Security. A true and correct copy of this letter is attached as **Exhibit E**.

12. On August 22, 2017, CREW received a response to its February 3, 2017 FOIA request from Citizenship and Immigration Services stating that "[a]fter completing its search for records and reviewing the records compiled, we have determined that users did not create records nor does it have custody and control over records that may be responsive." A true and correct copy of this letter is attached as **Exhibit F**. By letter dated June 28, 2017, the Transportation Security Administration also responded to CREW's FOIA request, stating that its "search failed to produce any records responsive to your request." A true and correct copy of this letter is attached as **Exhibit G**.

13. By letter dated October 17, 2017, the Department of Homeland Security indicated that Citizenship and Immigration Services was the proper office to respond to requests for documents sent to or from Citizenship and Immigration Services staff and that it was closing CREW's request. A true and correct copy of this letter is attached as **Exhibit H**. The Department of Homeland Security also indicated, in a letter dated October 16, 2017, that the

Transportation Security Administration was the proper office to respond to requests for documents sent to or from staff of the Transportation Security Administration and that it was closing CREW's request. A true and correct copy of this letter is attached as **Exhibit I**. The Department of Homeland Security never responded to CREW's request for documents sent to or from staff of the Department of Homeland Security. To date, CREW has not received a response from Office of the Director of National Intelligence or the State Department other than acknowledgements that the requests were received. True and correct copy of these acknowledgements are attached as **Exhibit J**. CREW received no response from the Department of Transportation.

14. CREW has also used the FOIA to ascertain whether this administration has issued guidance for the White House on ethics and recordkeeping responsibilities. For instance, on February 10, 2017, CREW submitted a FOIA request to the Office of Management and Budget for records of: "(1) all policies, procedures, and communications issued since January 20, 2017, relating to ethics standards, restrictions, and/or obligations for any employee of the Executive Office of the President ("EOP"); (2) all policies, procedures, and communications issued since January 20, 2017, relating to recordkeeping responsibilities for any employee of the EOP; and (3) all policies, procedures, and communications related to the use of personal and/or non-governmental email accounts to conduct official EOP business." As CREW explained in its FOIA request, the records requested would "shed light on the extent to which White House employees, including those at OMB, have been provided guidance on their ethical and recordkeeping responsibilities."

15. CREW has also used the FOIA to gather information about current White House officials that pertains to their compliance with ethics requirements. Toward this end, on June 23,

2017, CREW submitted a FOIA request to the Office of Governmental Ethics ("OGE") for "copies of the applications for Certificates of Divestiture submitted by the White House to OGE on behalf of Jared Kushner, Ivanka Trump, and their children." CREW's FOIA request was intended to shed light on whether Mr. Kushner and Ms. Trump had divested of interests that might conflict with their responsibilities in the White House. OGE made this information public in response to another FOIA request.

16. In addition, CREW has used the FOIA to shed light on those individuals and entities that are attempting to influence the President in the formulation of policy – information that White House visitor records would reflect. Toward that end, CREW submitted FOIA requests on July 19, 2017, to the Secret Service seeking copies of records of presidential visitors to Mar-a-Lago, in Florida, and the Trump National Golf Club in Bedminster, New Jersey. As CREW explained in its requests, the requested records would help inform the public about the outside influences that the President is subject to at these properties. Beyond a single document pertaining to a well-publicized visit to Mar-a-Lago by the Japanese Prime Minister, the Secret Service has refused to produce any other of the requested documents, claiming the requested documents are all presidential records and therefore not subject to the FOIA.

17. To the extent that these and other FOIA requests yield no responsive documents because of unlawful or unconstitutional actions taken by the President and the EOP, CREW is deprived of critical information it needs to fulfill its central mission.

18. CREW will continue its practice of submitting FOIA requests for documents from executive branch agencies on matters that relate to CREW's ongoing research, litigation, advocacy, and public education efforts. To the extent that CREW is unable to obtain certain

records through FOIA requests during this administration, CREW plans to seek to obtain records when they become publicly available pursuant to the PRA.

19. For those reasons, and for the reasons explained in greater detail below, CREW also has an interest in Defendants' preservation of records pursuant to their obligations under the PRA. The PRA defines presidential records, requires them to be preserved, and makes them subject to FOIA requests at the earliest five years after a president leaves office. For this reason, CREW may be unable to file a request for the presidential records of the current administration for at least eight years.

20. Nonetheless, CREW's ongoing efforts to enforce ethical norms and responsible government depend in part on an accurate and complete historical record of this and previous administrations. Improper classification of records today—including those that are the result of unlawful or incomplete guidance from the President—could result in the loss of presidential records forever.

21. CREW has a longstanding interest in ensuring that the presidential records of this administration are preserved in a manner that is consistent with the PRA, as evidenced by CREW's 2007 litigation of whether the EOP's Office of Administration is an agency subject to the FOIA; a 2010 report entitled "WITHOUT A TRACE: The Story Behind the Missing White House E-Mails and the Violations of the Presidential Records Act"; and a 2015 FOIA request to the George W. Bush Presidential Library seeking the production of presidential records.

22. In 2007, CREW filed suit against the EOP's Office of Administration (OA) over two FOIA requests seeking records relating to the potential loss of e-mail records of the EOP. *See Citizens for Responsibility & Ethics in Washington v. Office of Admin.*, 559 F. Supp. 2d 9 (D.D.C. 2008), aff'd, 566 F.3d 219 (D.C. Cir. 2009). This litigation implicated the PRA in three

respects. First, the documents at issue in the case would have shed light on potential noncompliance with the document preservation requirements of the PRA. Second, one of the central legal issues in the case was whether the OA was in fact an agency subject to the FOIA or whether CREW's only option would be to seek the same documents through use of the PRA. Third, to support its argument that the OA was an agency subject to FOIA, CREW relied in part on the presidential records of President Jimmy Carter. *See* Ex. A. (ECF 26-2), *Citizens for Responsibility & Ethics in Washington v. Office of Admin.*, No. 1:07-cv-00964-CKK (Sept. 26, 2007).

23.  In 2010, CREW published a 54-page report entitled "WITHOUT A TRACE: The Story Behind the Missing White House E-Mails and the Violations of the Presidential Records Act" ("Without a Trace"). *See* https://s3.amazonaws.com/storage.citizensforethics.org/wp-content/uploads/2016/07/20021509/CREW_Report_Bush_White_House_Email_Untold_Stories.pdf. Without a Trace was based on a review of tens of thousands of pages of Bush-era documents. The report demonstrated that top White House officials knew about the ongoing problems with the email archiving system, but repeatedly refused to take corrective action. Without a Trace further demonstrated that those failures to address the email archiving system led to the destruction of presidential records that might one day have shed light on critical events that occurred during in the Bush administration.

24.  In 2017, CREW also submitted a FOIA request for presidential records with the George W. Bush Presidential Library. The request sought all records of communications between August 1, 2015 and February 1, 2017 between the White House and Republican Members of the House that referred, mentioned, or pertained to then-Representative Mark Foley. The George W. Bush Presidential Library acknowledged receipt of CREW's request and stated

that it had identified approximately 1945 pages and 9362 electronic files of potentially responsive records for processing.

25. Thus, CREW has previously used presidential records to fulfil multiple aspects of its mission. CREW has relied on presidential records in litigation that clarified whether a component of the EOP was subject to the FOIA or to the PRA, published a lengthy report on the George W. Bush White House's noncompliance with the PRA, and exercised its right to seek presidential records from a previous administration under the PRA and the FOIA.

26. Based on CREW's previous interest in the PRA and the issues raised by the complaint in the above-captioned case, I anticipate CREW will have an ongoing interest in the current administration's compliance with the PRA (as well as the compliance of future administrations). I also anticipate that CREW will have an ongoing interest in obtaining records produced by the President and the White House through either the FOIA or the PRA.

27. CREW has a particular interest in the decisions that President Trump and his staff have made concerning potential or actual conflicts of interests involving the President, his staff, and senior members of this administration. I also anticipate CREW will seek to obtain records relating to those actual or potential conflicts when they become available to CREW, either under the FOIA or the PRA. To the extent that Defendants are not complying with their responsibilities under the PRA, CREW will be harmed in its ability to fully evaluate the President's and this administration's compliance with ethics rules and norms and to provide accurate historical context when CREW engages in future litigation and public education. To the extent that Defendants are not complying with their responsibilities under the PRA, CREW's future ability to advocate for ethically-sound legislative solutions and executive branch practices will be harmed.

28.     CREW has additional, immediate interests in the simple fact of whether the President and the EOP are complying with the PRA.

29.     First, to the extent that the President and the EOP have issued guidance that improperly classifies certain documents as presidential records (instead of agency records), CREW is unable to obtain those documents by submitting FOIA requests to agencies. Improper classification of records under the PRA could delay CREW's ability to request improperly classified records for at least eight years—assuming the relevant records are in fact preserved.

30.     Second, to the extent that certain records are not preserved because certain forms of communications are not subject to guidance that is consistent with the PRA, CREW suffers harm because it irrevocably loses access to those records. Although CREW may not be able to confirm the loss of those records for years, the damage to the historical record occurs at the moment records are not preserved, whether that is due to the lack of a classification guidance or the existence of an unlawful one.

31.     Third, if the President and the EOP supplant ordinary agency policymaking processes with White House processes, the President prevents CREW from obtaining documents related to those actions through FOIA requests, thereby thwarting the transparency and accountability that Congress intended would accompany its delegation of power to executive branch agencies. Unlawful subversion of the transparency and accountability requirements that Congress has mandated agencies follow could delay CREW's ability to request improperly classified records for at least eight years—assuming the relevant records are in fact preserved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 2, 2017

_____
Noah D. Bookbinder