# Exhibit B

TREY GOWDY, SOUTH CAROLINA
CHAIRMAN

ONE HUNDRED FIFTEENTH CONGRESS

ELIJAH E. CUMMINGS, MARYLAND
RANKING MINORITY MEMBER

# Congress of the United States
## House of Representatives

COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM

2157 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6143

MAJORITY  (202) 225–5074
MINORITY  (202) 225–5051

http://oversight.house.gov

September 25, 2017

The Honorable Donald F. McGahn, II
Counsel to the President
The White House
Washington, D.C. 20006

Dear Mr. McGahn:

Congress passed the Presidential Records Act to provide the framework for managing and preserving records created or received by the President, Vice President, their immediate staff, or individuals in the Executive Office of the President whose function is to assist or advise the President. Many emails from White House employees are considered records under the Act and therefore subject to certain recordkeeping requirements. This Committee has legislative jurisdiction over the Presidential Records Act, as well as the Federal Records Act and Freedom of Information Act.[1] As technology has changed and the use of email and other modern forms of electronic communication have become ubiquitous, the Committee has been active in updating portions of these laws. These updates include the Presidential and Federal Records Act Amendments of 2014 and the FOIA Improvement Act of 2016.[2]

As part of our regular oversight duties, the Committee, from time to time, inquires of the Executive Branch departments and agencies about their compliance with these federal laws.[3] With numerous public revelations of senior executive branch employees deliberately trying to circumvent these laws by using personal, private, or alias email addresses to conduct official government business, the Committee has aimed to use its oversight and investigative resources to prevent and deter misuse of private forms of written communication.[4] Based on yesterday's *Politico* reporting regarding private email use for official government business by a senior

---

[1] U.S. House of Rep's, Rule X(n)(10).

[2] Pub. L. No. 113-187 (2014); Pub. L. No. 114-185 (2016).

[3] *See, e.g.*, Letter from Henry Waxman, Chairman, H. Comm. on Oversight and Gov't Reform, to Michael Astrue, Comm'r, U.S. Soc. Sec. Admn., *et al.* (Apr. 12, 2007).

[4] *See* Letter from Darrell Issa, Chairman, H. Comm. on Oversight and Gov't Reform, to Jeffrey Zients, Acting Dir., Office of Mgmt. & Budget, *et al.* (Dec. 13, 2012); Letter from Jason Chaffetz, Chairman, H. Comm. on Oversight and Gov't Reform, to Kathleen McGettigan, Acting Dir., Office of Personnel Mgmt., *et al.* (Mar. 8, 2017).

The Honorable Donald F. McGahn, II
September 25, 2017
Page 2

member of the President's staff,[5] today we write towards a similar end to you and the heads of the Cabinet departments and other CFO Act agencies.

As a follow-up to the White House's April 11, 2017, response to the Committee's letter on March 8, 2017, please provide the following documents and information by October 9, 2017:

1. Have you or any non-career official at the White House ever used a personal email account to conduct official business? If so, please identify the individual and the account used, and provide evidence of measures to ensure compliance with federal law.

2. Have you or any non-career official at the White House ever used an alias email account to conduct official business? If so, please identify the individual and the account used, and provide evidence of measures to ensure compliance with federal law.

3. Have you or any non-career official at the White House ever used text messages, phone-based message applications, or encryption software to conduct official business? If so, please identify the individual, cellular number and account used, and provide evidence of measures to ensure compliance with federal law.

4. Please identify any changes to the White House's policies or directives for any of the following areas since January 1, 2017:

   a. Policies referring or relating to the use of non-official electronic messaging accounts, including email, text message, messaging applications, and social media platforms to conduct official business, including but not limited to archiving and recordkeeping procedures;

   b. Policies referring or relating to the use of official text message or other messaging or communications applications, and social media platforms to conduct official business, including but not limited to archiving and recordkeeping procedures; and

   c. Policies and procedures to ensure all communications related to the creation or transmission of federal records on official electronic messaging accounts other than email, including social networking platforms, internal agency instant messaging systems and other communications applications, are properly captured and preserved as federal records.

---

[5] Josh Dawsey, *Kushner used private email to conduct White House business*, POLITICO (Sept. 24, 2017), *available at* http://www.politico.com/story/2017/09/24/jared-kushner-private-email-white-house-243071.

The Honorable Donald F. McGahn, II
September 25, 2017
Page 3


An attachment to this letter provides additional instructions about responding to this request. Thank you in advance for responding fully and in a timely manner. If you have any questions about this request, please contact Drew Baney of the Majority staff on the Committee at (202) 225-5074 and Krista Boyd of the Minority staff on the Committee (202) 225-9493.

Sincerely,

Trey Gowdy

Elijah E. Cummings

Enclosures

**Responding to Committee Document Requests**

1.  In complying with this request, you are required to produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf.  You should also produce documents that you have a legal right to obtain, that you have a right to copy or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.  Requested records, documents, data or information should not be destroyed, modified, removed, transferred or otherwise made inaccessible to the Committee.

2.  In the event that any entity, organization or individual denoted in this request has been, or is also known by any other name than that herein denoted, the request shall be read also to include that alternative identification.

3.  The Committee's preference is to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

4.  Documents produced in electronic format should also be organized, identified, and indexed electronically.

5.  Electronic document productions should be prepared according to the following standards:

    (a) The production should consist of single page Tagged Image File ("TIF"), files accompanied by a Concordance-format load file, an Opticon reference file, and a file defining the fields and character lengths of the load file.

    (b) Document numbers in the load file should match document Bates numbers and TIF file names.

    (c) If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    (d) All electronic documents produced to the Committee should include the following fields of metadata specific to each document;

    BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT,CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

6.  Documents produced to the Committee should include an index describing the contents of the production.  To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder should contain an index describing its contents.

7.  Documents produced in response to this request shall be produced together with copies of file labels, dividers or identifying markers with which they were associated when the request was served.

8.  When you produce documents, you should identify the paragraph in the Committee's schedule to which the documents respond.

9.  It shall not be a basis for refusal to produce documents that any other person or entity also possesses non-identical or identical copies of the same documents.

10. If any of the requested information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), you should consult with the Committee staff to determine the appropriate format in which to produce the information.

11. If compliance with the request cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date.  An explanation of why full compliance is not possible shall be provided along with any partial production.

12. In the event that a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee; and (e) the relationship of the author and addressee to each other.

13. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

14. If a date or other descriptive detail set forth in this request referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, you are required to produce all documents which would be responsive as if the date or other descriptive detail were correct.

15. Unless otherwise specified, the time period covered by this request is from January 1, 2009 to the present.

16. This request is continuing in nature and applies to any newly-discovered information.  Any record, document, compilation of data or information, not produced because it has not been located or discovered by the return date, shall be produced immediately upon subsequent location or discovery.

17. All documents shall be Bates-stamped sequentially and produced sequentially.

18. Two sets of documents shall be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets shall be delivered to the Majority Staff in Room 2157 of the Rayburn House Office Building and the Minority Staff in Room 2471 of the Rayburn House Office Building.

19. Upon completion of the document production, you should submit a written certification, signed by you or your counsel, stating that:  (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

## Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise.  A document bearing any notation not a part of the original text is to be considered a separate document.  A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, email (desktop or mobile device), text message, instant message, MMS or SMS message, regular mail, telexes, releases, or otherwise.

3. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope.  The singular includes plural number, and vice versa.  The masculine includes the feminine and neuter genders.

4. The terms "person" or "persons" mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

5.  The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

6.  The term "referring or relating," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with or is pertinent to that subject in any manner whatsoever.

7.  The term "employee" means agent, borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, subcontractor, or any other type of service provider.

**COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM**
**U.S. HOUSE OF REPRESENTATIVES**
**115TH CONGRESS**

**NOTICE OF APPEARANCE OF COUNSEL**

**Counsel submitting:** _____

**Bar number:** _____      **State/District of admission:** _____

**Attorney for:** _____

**Address:** _____

**Telephone: ( _____ ) _____ - _____**

**Pursuant to Rule 16 of the Committee Rules, notice is hereby given of the entry of the**

**undersigned as counsel for** _____ **in (select one):**

&#9673; **All matters before the Committee**

&#9711; **The following matters (describe the scope of representation):**

_____

_____

**All further notice and copies of papers and other material relevant to this action should be directed to and served upon:**

        **Attorney's name:** _____

        **Attorney's email address:** _____

        **Firm name (where applicable):** _____

        **Complete Mailing Address:** _____

                              _____

**I agree to notify the Committee within 1 business day of any change in representation.**

_____      _____

**Signature of Attorney**                                              **Date**